UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

**FILED**

DEC 3 1 2007

CLERK

---

BRENDA SCHONEBAUM,

               PLAINTIFF,

VS

HUB CITY, INC.,

               DEFENDANT.

)
)
)
)
)

**COMPLAINT** *07-1030*

---

## JURISDICTION

(1)  This is a sexual harassment and retaliation in employment claim arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*

(2)  Plaintiff Brenda Schonebaum ("Schonebaum") is an adult female resident of Aberdeen, South Dakota.

(3)  Hub City, Inc. ("Hub City") is a manufacturing business with a plant located in Aberdeen, South Dakota.

(4)  Schonebaum filed a charge of discrimination with the South Dakota Division of Human Rights on or before July 12, 2007 and received her Notice of Right to Sue on December 3, 2007.

(5) This Court has jurisdiction over Plaintiff's sexual harassment and retaliation claims pursuant to 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343(4).  Venue is proper in accordance with 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000-5(f)(3).

## Factual Allegations

(6)  Schonebaum was hired by Hub City on January 8, 2007.

(7)  Schonebaum  was performing her position in a manner that met the expectations of Hub City.

(8)   On or about January 16, 2007, Schonebaum was approached by Jerry Tollefson, a Hub City plant supervisor, who began asking her personal questions about her life.

(9)   Tollefson initiated a pattern of following Schonebaum around at work, asking her  about her sex life and her marriage, making comments about her "cute butt and beautiful figure" and volunteering comments about his own sex life.

(10)  Tollefson falsely suggested to Schonebaum's co-employees that he and Schonebaum were having an intimate relationship.

(11)  When Schonebaum learned from her co-employees that Tollefson was making offensive suggestions about her relationship with him, she asked him to leave her alone.

(12)  Schonebaum was initially hesitant to complain about Tollefson because of his managerial position in the plant.

(13)  When Schonebaum was out of work on an excused absence on February 14, 2007, Tollefson  got her number from Hub City records called her at home from a Hub City phone in the evening hours in an effort to have contact with her.

(14)  On February 15, 2007 Schonebaum informed Tollefson that she did not wish to have any phone calls from him.

(15) Schonebaum received an excused medical leave from work for the remainder of the day on February 15. Tollefson repeatedly called her at home during the weekend from a Hub City phone.

(16) On February 19, 2007 when Schonebaum returned to work, Tollefson confronted her about rejecting his attentions and his phone calls. When Schonebaum expressed that he prevented her from doing her work and that she wanted him to stay away from her, he replied that he was a supervisor and could be anywhere he wanted in the plant.

(17) On February 19, 2007, Schonebaum reported to her manager Jeff Hendrickson that Tollefson was sexually harassing her and asked him to assign her to work in the plant where Tollefson could not bother her. Henderickson asked her about her health instead of her complaints about Tollefson during this meeting.

(18) On February 19, 2007, Tollefson followed Schonebaum out of her meeting with Hendrickson and asked her if the health problems Hendrickson had asked her about related to the way she wiped herself after going to the bathroom.

(19) Hendrickson did not reassign Schonebaum or limit Tollefson's access to her.

(20) On or about February 21, 2007 Tollefson grabbed Schonebaum in an aisle in the plant and touched her breast in an attempt to embrace her.

(21) After telling Tollefson not to touch her again, Schonebaum reported the grabbing incident to Hendrickson.

(22) Hendrickson did nothing about Schonebaum's report and told her he did not know what to do about Tollefson's behaviors.

(23)  On or about February 22, 2007, the day after her second report of sexually harassing behavior to Hendrickson, Tollefson approached Schonebaum and grabbed her by the arm to pull her away from a male co-employee saying that she should not be associating him and that Tollefson wanted to "protect" her.

(24)  Tollefson grabbed Schonebaum's arm hard enough to cause a bruise.

(25)  Tollefson came to Schonebaum's home twice and attempted to get into her home.

(26)  The following day, Schonebaum again reported Tollefson's behaviors to Hendrickson and to day supervisor Jerry Hier,  who told her that he would "talk to someone" about her complaints.

(27)  Following her report to Hendrickson and Hier, Tollefson approached Schonebaum in the workplace, grabbed her by the wrist and asked, "What do I have to do to make you talk to me?"

(28)  On or before March 3, 2007, at least one other employee had reported Tollefson's sexually harassing behavior toward Schonebaum to Hub City management.

(29)  After her reports to both  Hendrickson and Hier, Tollefson continued to make repeated  phone calls to Schonebaum's home from the Hub City phone.

(30)  On March 5, 2007 Schonebaum reported Tollefson's harassing behaviors to Peg Canter, an HR manager for Hub City.

(31)  Schonebaum told Canter that the stress of Tollefson's sexual harassment had caused her to be physically ill, that her doctor had suggested "nerve pills" and a medical leave from work.

(32)  Schonebaum was given a medical leave of absence from work.

4

(33)  Canter suggested that Schonebaum should follow her doctor's recommendation but did not comment on any investigation into or discipline arising from Schonebaum's reports.

(34)  On March 21, 2007 Canter sent Schonebaum a letter advising Schonebaum that Schonebaum should resign from her job for medical reasons and should give Canter a written statement that she would like to be reconsidered for employment.

(35)  Schonebaum was constructively discharged from Hub City when she refused to resign but was "removed from the employee rolls."

COUNT ONE:
Violation of 42 USC 2000e-2(a)
Sexual Harassment

(36)  Schonebaum reasserts her allegations in paragraphs 1-35 herein.

(37)  Schonebaum was subjected to a hostile work environment by a male supervisor in violation of company policy and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

(38)    Hub City's supervisor created a hostile, intimidating working environment that substantially interfered with Schonebaum's employment.

(39)    Schonebaum timely reported her supervisor's sexual harassment to other supervisory employees at Hub City beginning in February 2007.

(40)    Hub City knew or should have known of Tollefson's sexually harassing behaviors.

(41)    Despite Schonebaum's reports of sexual harassment, Hub City did not timely investigate or take appropriate remedial action to address Schonebaum's reports of sexual harassment.

(42)    As a result of Hub City's failure to timely investigate or take appropriate remedial action, Schonebaum was subjected to additional sexual harassment and offensive, painful touching from her harasser.

(43)    Hub City's failure to protect Schonebaum from sexual harassment put Schonebaum in fear of her personal safety in the workplace and in her home.

(44)    Hub City failed to maintain an effective policy to protect Schonebaum from sexual harassment in the workplace.

(45)    Hub City failed to maintain an effective policy to promptly investigate sexual  harassment allegations in the workplace.

(46)    Schonebaum's medical leave was a reasonably foreseeable result of the sexual harassment she endured in the workplace.

(47)    Schonebaum was constructively discharged from her employment because of Hub City's refusal to timely investigate or take appropriate remedial actions to stop Tollefson's sexually harassing behavior.

(48)    As a result of the sexual harassment she endured in the workplace, Schonebaum suffered physical illness, stress, humiliation, anxiety, lost wages, benefits, incurred costs and related expenses as a result of being unemployed and incurred costs and related expenses as a result of seeking medical help for her stress.

(49)    Hub City's actions were willful, reckless and malicious and in intentional disregard of Schonebaum's federally protected employment rights.

COUNT TWO:
Violation of 42 USC 2000e-3(a)
Retaliation

(50)    Schonebaum reasserts her allegations from paragraphs 1-49 herein.

(51)   When Schonebaum reported sexually harassing behavior from a male supervisor beginning in February 2007, she was engaging in her federally protected right to oppose actions that she reasonably believed were violations of Title VII.

(52)   Schonebaum last reported sexually harassing behavior from a male supervisor on March 5, 2007.

(53)   Immediately after Schonebaum's March 5, 2007 sexual harassment report, she was placed on an approved medical leave of absence because of stress.

(54)   During Schonebaum's leave, Hub City determined that Schonebaum's sexual harassment reports were meritorious.

(55)   Even though it knew that the prospect of seeing her harasser in the workplace was very stressful for Schonebaum, Hub City did not inform Schonebaum that her harasser had been terminated and would no longer be present in the Hub City workplace.

(56)   Hub City suggested that Schonebaum should not return to work and should instead resign her position for "medical reasons."

(57)   Hub City constructively discharged Schonebaum as a direct result of her sexual harassment report on March 5, 2007.

(58)   As a result of the retaliation she endured in the workplace, Schonebaum suffered physical illness, stress, humiliation, anxiety, lost wages, benefits, incurred costs and related expenses as a result of being unemployed and incurred costs and related expenses as a result of seeking medical help for her stress.

(59)   Hub City's actions were willful, reckless and malicious and in intentional disregard of Schonebaum's federally protected employment rights.

## COUNT THREE:
### Negligent Infliction of Emotional Distress

(60)  Schonebaum reasserts her allegations from paragraphs 1-59 herein.

(61)  Hub City intentionally and unreasonably failed to follow its own policies or enforce Schonebaum's federally protected rights against sexual harassment.

(62)  Hub City intentionally and unreasonably failed to follow its own policies or enforce Schonebaum's federally protected rights against retaliation.

(63)  Hub City knew or should have known that Schonebaum would suffer serious emotional distress and a physical manifestation of her distress when it intentionally and unreasonably failed to enforce its own policies or Schonebaum's federally protected employment rights.

(64) Hub City knew or should have known that Schonebaum would suffer serious emotional distress and a physical manifestation of her distress when it intentionally and unreasonably constructively discharged her from employment.

(65)  Schonebaum suffered lost wages, benefits, fear, shame, humiliation, stress and a physical manifestation of her distress as  result of Hub City's intentional and unreasonable response to her sexual harassment reports and her constructive discharge.

## COUNT FOUR:
### SDCL § 20-13-10
### Violation of South Dakota's Human Rights Laws

(66)  Plaintiff realleges paragraphs 1 through 65 of this Complaint herein.

8

(66)  Hub City's acts and omissions as set out herein constitute sexual discrimination and retaliation in violation of South Dakota Codified Laws Chapter 20-13.

(67)  Schonebaum lost wages, benefits, incurred costs and related expenses as a result of being unemployed and has suffered humiliation, anxiety and stress as a result of Hub City's actions.

(68)  Hub City's actions were willful, reckless and malicious and in intentional disregard of Schonebaum's protected employment rights under South Dakota law.

WHEREFORE, Schonebaum prays for judgment against Hub City as follows:

a.  For a trial by jury on the merits of her claims;

b.  For compensatory damages in such amount as the evidence at trial may show;

c.  For damages, including but not limited to, those damages allowed by 42 U.S.C. §2000 *et seq* and any other pertinent and applicable statute, rule or regulation, whether state or federal.

d.  For punitive damages in such an amount as the evidence at trial may show;

e.  For costs and disbursements incurred herein, including back wages, prejudgment interest and reasonable attorney fees, and for such other and further relief as the Court may deem just.

Dated this _28th_ day of December, 2007.

JOHNSON & EKLUND

Stephanie E. Pochop
P.O. Box 149
Gregory, SD  57533
Attorney for Plaintiff Brenda Schonebaum